TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00285-CV






The Aetna Casualty & Surety Company, Appellant



v.



Texas Workers' Compensation Insurance Facility, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 95-04437, HONORABLE PETE LOWRY, JUDGE PRESIDING 






 The Aetna Casualty and Surety Company appeals from a declaratory judgment favoring
the Texas Workers' Compensation Insurance Facility. The Facility sought the judgment after Aetna
requested indemnification from the Facility for sums Aetna paid to defend and to settle Jane Craft's claims
that Aetna mishandled her workers' compensation claim. The judgment declares the indemnification
provision in the servicing agreement between Aetna and the Facility "unenforceable as to bad faith, gross
negligence, punitive damages, and other matters asserted in the underlying lawsuit" by Craft. Aetna
contends by three points of error the trial court should have declared the provision valid, enforceable, and
applicable. We will affirm the judgment.


BACKGROUND


The relationship of Aetna and the Facility

 The Facility is a private association created by the State to provide workers' compensation
insurance to those otherwise unable to obtain that insurance. It is the successor to the Texas Workers'
Compensation Assigned Risk Pool. All providers of workers' compensation insurance were required to
join the Pool and the Facility. See former Tex. Ins. Code Ann. art. 5.76-2, § 2.01. (1) The member
insurance companies reinsure policies the Facility issues. Their liability is determined by their share of the
workers' compensation market. Id. at § 4.02(b). 

 Though Aetna is a Facility member by statutory requirement, it is a servicing company by
contract. The Pool and Facility contracted with companies, including member insurers, to service the
policies sold. See id. at § 4.08. The servicing-company agreement and the Pool bylaws in effect when
Aetna became a servicing company call for the servicing companies to receive a share of premiums in
exchange for issuing policies in their names and processing claims. The agreement classifies Aetna as an
independent contractor that "retains the right to control the means, manner and details of fulfilling its
obligations under this Agreement." It obligates Aetna to bear all costs and expenses incident to servicing
the policies except "authorized legal expenses." The agreement calls for Aetna to be indemnified as set
forth in the following Pool bylaws:


Any person or insurer made or threatened to be made a party to any action, suit, or
proceeding, because such person or insurer was a member, or a servicing carrier . . . shall
be indemnified against all judgments, fines, amounts paid in settlement, reasonable costs
and expenses including attorney's fees and any other liabilities that may be incurred as a
result of such action, suit or proceeding . . . except in relation to matters as to which he or
it shall be adjudged in such action, suit or proceeding to be liable by reason of willful
misconduct in the performance of his or its duties or obligations to the Agency . . . . If any
such action, suit or proceeding is compromised, it must be with the approval of the
Governing Committee of the Agency.


. . .



In each instance in which a question of indemnification arises, entitlement thereto, pursuant
to the conditions set forth herein, shall be determined by the Governing committee which
shall also determine the time and manner of payment of such indemnification; provided,
however, that a person or insurer who or which has been wholly successful, on the merits
or otherwise, in the defense of a civil or criminal action, suit or proceeding of the character
herein above described, shall be entitled to indemnification as authorized herein. 



Despite the bylaw requiring governing committee approval of settlements, in practice, servicing companies
handled litigation as they saw fit, including payments pursuant to settlement agreements. If they applied for
reimbursement, the Facility assessed the merits of the claim. The Facility reimbursed some servicing
carriers for defending and settling bad-faith claims the Facility deemed lacking in merit.


Trial-court action

 This case was tried on stipulated facts. Craft was hurt in April 1989, in the course and
scope of her employment at Hidden Oaks, when a desk collapsed and seriously injured her foot. Hidden
Oaks had a workers' compensation policy through the Facility. Aetna was the servicing company for her
claim.

 Aetna's decision not to settle the claim early was costly. Though Aetna initially made
weekly compensation and medical-benefits payments to Craft, it stopped and refused to resume. Aetna
rejected Craft's offer to settle for $15,000 and two years of medical benefits. The Industrial Accident
Board awarded Craft compensation for her injuries and lifetime medical benefits. Aetna appealed. A jury
found Craft totally and permanently disabled and awarded her 401 weeks of compensation and lifetime
medical benefits for treatment of her injuries. Craft then sued Aetna, alleging deceptive trade practices,
failure to process the claim in good faith, and similar misdeeds. Although Aetna claims it had a tenable
defense, it settled with Craft for $1.5 million because it feared further legal expenses. Pursuant to a
standard practice, Aetna settled the case without consulting the Facility's governing committee.

 Aetna requested the Facility to indemnify Aetna for the $1.5 million settlement plus
$1,062,117.73 in attorney's fees incurred in defending the suit. The Facility denied the request on grounds
that Aetna violated its duty of good faith and fair dealing and committed gross negligence in handling Craft's
claim.

 The Facility filed the present suit for declaratory judgment that Aetna is not entitled to
indemnity on five grounds. Without citing a particular ground, the trial court held the indemnity provision
"is unenforceable as to bad faith, gross negligence, punitive damages, and the other matters asserted" in
Craft's suit.


DISCUSSION


 By three points of error, Aetna contends the trial court erred in rendering judgment for the
Facility. Aetna contends the court erred by holding the indemnity clause unenforceable and argues the
Facility's suit for declaratory judgment was at least partly barred by res judicata or collateral estoppel. 

 Aetna's first two points of error are opposite sides of the same issue: whether the trial court
should have required the Facility to indemnify Aetna for the payment and attorney's fees incurred in
defending and settling Craft's claims of bad faith, gross negligence, and violations of the Deceptive Trade
Practices Act and Insurance Code. Because the trial court did not specify the basis of its judgment, we
must affirm the judgment if any of the grounds the Facility asserted supports the judgment. See Rogers v.
Ricane Enterprises, 772 S.W.2d 76, 79 (Tex. 1989). We will consider the first basis, that "[t]he Facility's
indemnification provision is unenforceable because it does not meet the express negligence rule, nor by
extension the express bad faith, express gross negligence, and express punitive damages rules for construing
indemnification provisions." The validity of this basis turns on the interpretation of the indemnification clause
and the nature of the servicing companies' relationship with the Facility.

 Courts have required indemnity clauses to state expressly that they cover indemnitees for
their own misdeeds. First in this line of cases was the supreme court's holding that an indemnity clause
must expressly state it covers an indemnitee for the indemnitee's negligence. Ethyl Corp. v. Daniel
Constr. Co., 725 S.W.2d 705 (Tex. 1987). That contract required Daniel, a contractor, to indemnify
Ethyl, a property owner, from suits for Daniel's negligence, but did not address situations in which Ethyl
was also negligent. Id. at 707. The supreme court held Daniel was not required to indemnify Ethyl for
damages arising from Ethyl's negligence because the contract did not provide expressly for such
indemnification. Id. at 708. The supreme court also has held no obligation arises to indemnify the
indemnitee for attorney's fees accrued in defending a suit alleging the indemnitee's negligence--even when
an indemnitee is not found to be negligent--absent a clause expressly requiring indemnification for suits
alleging the indemnitee's negligence. Fisk Elec. Co. v. Constructors & Assoc., 888 S.W.2d 813, 815-16
(Tex. 1994). Constructor, the indemnitee, conceded that the contract did not meet the express-negligence
test, even though it required Fisk to indemnify Constructor from "all claims, damages losses, and expenses,
including but not limited to attorney's fees." Id. at 815.

 Courts also have applied the requirement of an express-indemnification clause to strict-liability and gross-negligence cases. Houston Lighting & Power Co. v. Atchison, Topeka & Santa Fe
Ry. Co., 890 S.W.2d 455, 459 (Tex. 1994) (indemnity clause expressly including negligence does not
include strict liability; clause must expressly state it indemnifies for strict liability); Crown Central
Petroleum Corp. v. Jennings, 727 S.W.2d 739, 742 (Tex. App.--Houston [1st Dist.] 1987, no writ)
(indemnity clause expressly excluding negligence also implicitly excludes gross negligence; to indemnify for
gross negligence, indemnity clause must expressly include it). In HL&P, the supreme court found a
general-indemnity clause insufficient to provide indemnity for gross negligence. By requiring express
indemnification for gross negligence, the court sought to avoid shifting huge liabilities onto indemnitors
unaware of such potential liability, to discourage drafting of vague indemnity clauses, and to encourage
responsible behavior by clearly delineating responsibilities. HL&P, 890 S.W.2d at 458-59.

 Similar concerns guide us to conclude that a contract provision for indemnity must expressly
require indemnity for damages, attorney's fees, and settlement payments a servicing company incurs in
defending suits based upon allegations of Deceptive-Trade-Practices-Act and Insurance-Code violations,
gross negligence, and breach of the covenant of good faith and fair dealing. Because the supreme court
has decided that companies cannot be indemnified for defending allegations of their own negligence, absent
an express provision to that effect, we cannot permit implicit indemnification of actions allegedly committed
under the more culpable mental states required for the actions raised here. 

 Requiring express indemnification will provide more certainty among Facility members and
servicing companies. Aetna argues that the express-indemnity cases do not apply because they seek to
protect indemnitors who negotiated at arms' length from unexpected liability, whereas Aetna participated
on both sides as a member of the Facility and as a servicing company. The very existence of this appeal,
however, negates the idea that Aetna's dual role ensured accord and avoided unexpected liability. The
uncertainty exists in part because the bad-faith cause of action did not arise until Aranda v. Insurance Co.
of N. Am., 748 S.W.2d 210 (Tex. 1988); thus, the Facility did not contemplate indemnification for defense
of that action when amending its bylaws in 1976 or entering the servicing agreement with Aetna in 1979. 
Though the Facility has indemnified some servicing companies for defending bad-faith suits, there is no
evidence the Facility believes it is required to indemnify all servicing companies who defend bad-faith
claims. Aetna contends the Facility has shown no discernible pattern in its decisions on applications for
indemnification in defending against bad-faith claims. Requiring that any indemnification be express will
avoid confusion and encourage consistent, responsible conduct by both servicing companies and the
Facility.

 Aetna contends, however, that it cannot be liable for a bad-faith claim because it is the
Facility's agent, relying on a non-liability statute and principal-agent case law. We note initially that Aetna's
liability is not at issue in this declaratory judgment action; Aetna settled, and the only issue is whether the
trial court correctly declared the indemnity clause unenforceable regarding indemnity for defending and
settling claims like Craft's. 

 We conclude that neither the statute nor the case law supports Aetna's position. The
statute on which Aetna relies states that neither the Facility nor its agents are liable for claims "arising out
of or in connection with any judgment or decision made in connection with the performance" of their
statutory powers and duties. See former Tex. Ins. Code Ann. art. 5.76-2, § 2.12. This apparently shared
nonliability does not resolve whether the Facility must indemnify its agent for defense and settlement of
Craft's claims. Similarly, general principal-agent concepts do not determine whether the disputed
indemnity clause is enforceable as to these causes of action.

 Aetna further contends our finding of a vested right to indemnity in a previous case involving
Aetna and the Facility either precludes our reconsideration of this issue or controls the outcome of this case. 
In Texas Workers' Compensation Facility v. State Bd of Ins., we relied on the strong presumption
against retroactivity of statutes and held servicing companies did not lose their contractual right to
indemnification by the Facility upon the 1991 enactment of a statute forbidding the Facility from
indemnifying servicing companies. 894 S.W.2d 49, judgm't withdrawn by agr., 910 S.W.2d 176 (Tex.
App.--Austin 1995, no writ) (Aetna was an appellee; opinion not withdrawn despite settlement,
withdrawal of judgment, and dismissal of appeal). Aetna urges the decision prohibits our reconsideration
of whether indemnity applies in this case. Aetna alternatively contends the vested right to indemnity found
in Facility survives the subsequent evolution of the express-indemnity doctrine and bad-faith cause of
action. 

 The supreme court summarized the preclusive effects of previous judicial decisions in Barr
v. Resolution Trust Corp., 837 S.W.2d 627, 630 (Tex. 1992). 


Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that
has been finally adjudicated, as well as related matters that, with the use of diligence,
should have been litigated in the prior suit. Issue preclusion, or collateral estoppel,
prevents relitigation of particular issues already resolved in a prior suit. 



Id. (citations omitted). In Facility, Standard Financial Indemnity Corporation sued the servicing companies
after the Pool denied SFIC's application to be a servicing company. Id. at 51. Until January 1, 1992, the
Facility indemnified the servicing companies for attorney's fees they incurred defending the SFIC suit. It
stopped after the statute was amended to provide that "[t]he Facility may not indemnify the servicing
companies." Former Tex. Ins. Code Ann. art. 5.76-2, § 2.05(i). (2) On appeal, the Facility raised these
issues: (1) whether the servicing companies have a vested right to indemnification under the servicing-company agreement; and (2) whether the legislature intended section 2.05(i) to apply retroactively to
diminish any such right. Id. at 53. Relying on a strong presumption against retroactivity of statutes, this
Court held the 1991 amendment did not revoke vested contractual rights to indemnification created by the
existing servicing agreements. Id. at 55.

 We conclude Facility does not preclude our reconsideration of this issue. In that case,
the Facility and other parties stipulated that, before adoption of the amendment, the indemnity clause
required indemnity for the servicing-companies' attorney's fees, but questioned whether a subsequent
statute revoked that clause. Id. at 53. The stipulation did not address the main issue in this case. Here,
the central question is whether the clause ever required indemnity for defending these claims. The
distinction takes this case beyond the preclusive effect of the previous Facility decision. There is no
showing that the claim here--that the indemnity clause does not encompass costs Aetna incurred in defense
of a claim--was remotely related to or should have been brought in the suit for costs accrued in defending
the Facility's rejection of an application to become a servicing company. Neither res judicata nor collateral
estoppel applies.

 Nor does the reasoning behind our conclusion in Facility, regarding vested rights to
indemnity, require reversal here. Because we refused in Facility to apply retrospectively the 1992 statute
to the 1979 agreement, Aetna contends we now should refuse to apply retrospectively the express-indemnity doctrine (announced in 1987) to find no right to indemnification for defending allegations of bad-faith (a type of claim first recognized by the supreme court in 1988). The supreme court has shown no
compunction about applying the express-indemnity doctrine to contracts executed before the court
announced the doctrine. See Ethyl, 725 S.W.2d at 707. Perhaps this is because the statutory prohibition
of indemnification was external to the contract, whereas the express-indemnity doctrine concerns the
proper construction of contract terms. See Fisk, 888 S.W.2d at 814 (express-negligence requirement is
a rule of contract interpretation). Regardless of the reasoning, the supreme court has applied the doctrine
retrospectively. The vesting of a contractual right to indemnification does not require that we imply the
indemnity provision encompassed the subsequently developed bad-faith cause of action. Rather, the
express-indemnity doctrine argues against inclusion of bad-faith claims in the indemnification provision. To
the extent a right to indemnification vested upon agreement to the provision, the right vested only as to the
causes of action expressly included and therefore could not have included the then-unrecognized bad-faith
cause of action.

 The contract did not expressly require the Facility to indemnify Aetna for costs incurred
in defending causes of action for bad-faith, gross negligence, or violations of the DTPA and Insurance
Code. Under Ethyl and its successors, the Facility does not have to indemnify Aetna for defending and
settling such claims. Under Fisk, the Facility does not have to indemnify Aetna for attorney's fees
expended in defense of those actions; if parties who prevail in their defense of unindemnified claims are not
indemnified for their accrued fees, a party who paid more than a million dollars in attorney's fees before
settling unindemnified claims for $1.5 million surely cannot. The previous Facility case neither bars our
consideration of nor controls our disposition of the present appeal.

 We overrule points of error one, two, and three. Having overruled all points of error, we
affirm the judgment of the trial court.



 

 John Powers, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: April 2, 1998

Do Not Publish
1. The Facility was created to succeed the Pool by Act of December 11, 1989, 71st Leg., 2d C.S., ch.
1, § 13.11(a), 1989 Tex. Gen. Laws 1, 90 (codified at Tex. Ins. Code Ann. art. 5.76-2). Amended in the
interim, article 5.76-2 was repealed entirely by Act of June 1, 1997, 75th Leg., R.S., ch. 594, § 3.01(1),
1997 Tex. Gen. Laws 2081, 2081.
2. Act of August 25, 1991, 72d Leg., 2d C.S., ch. 12, § 18.09, 1991 Tex. Gen. Laws 252, 344
(effective January 1, 1992) (repealed, see footnote 1).



3. Relying on a strong presumption against retroactivity of statutes, this
Court held the 1991 amendment did not revoke vested contractual rights to indemnification created by the
existing servicing agreements. Id. at 55.

 We conclude Facility does not preclude our reconsideration of this issue. In that case,
the Facility and other parties stipulated that, before adoption of the amendment, the indemnity clause
required indemnity for the servicing-companies' attorney's fees, but questioned whether a subsequent
statute revoked that clause. Id. at 53. The stipulation did not address the main issue in this case. Here,
the central question is whether the clause