HOUSTON LIGHTING & POWER
COMPANY, Petitioner,

v.

ATCHISON, TOPEKA & SANTA
FE RAILWAY COMPANY,
Respondent.

No. D–4505.

Supreme Court of Texas.

Argued Sept. 20, 1994.

Decided Dec. 22, 1994.

Paul Yetter, Houston, Joe R. Greenhill, Austin, for petitioner.

Douglas W. Poole, Kenneth J. Bower, Galveston, for respondent.

GONZALEZ, Justice, delivered the opinion of the court in which all Justices join.

This suit involves the construction of an indemnity agreement between Houston Lighting & Power Company (HL & P), and Atchison, Topeka & Santa Fe Railway Company (Santa Fe). The case originated from a Santa Fe employee's claims against Santa Fe for injuries sustained on the job. Santa Fe

joined HL & P as a third-party defendant, claiming the right to indemnity under their indemnity agreement. After a jury trial, the trial court rendered judgment against Santa Fe and ordered HL & P to indemnify Santa Fe on the basis of the indemnity agreement. The court of appeals affirmed. 863 S.W.2d 141. We reverse the judgment of the court of appeals and hold that parties seeking to indemnify an indemnitee against strict liability must expressly state that intent in their indemnity agreement.

## I. FACTS

HL & P operates a rotary coal dumper at its Smither's Lake power plant in Fort Bend County. A rotary coal dumper unloads a coal train by moving each car into position inside the dumper, a warehouse-sized building, through the use of a mechanical arm. Rotary couplers link the coal cars together and allow the dumper to invert a coal car and empty the coal into an underground pit while the car is still linked to the preceding and following cars. Because the caboose does not have a rotary coupler, however, the last car must be uncoupled from the caboose before being emptied.

HL & P and Santa Fe had a prior agreement regarding the maintenance of a railroad track which brought coal to the Smither's Lake plant. When HL & P installed the rotary coal dumper, the parties amended this agreement as follows:

> Notwithstanding anything contained in Section 3 of Article I of Original Contract to the contrary, [HL & P] agrees that it will at all times indemnify and save harmless Railway Company against all claims, demands, actions or causes of action, arising or growing out of loss of or damage to property, including said rotary dumper and appurtenances, and injury to or death of persons, including employees of Railway Company, resulting in any manner from the construction, maintenance, use, state of repair or presence of said rotary dumper and appurtenances under or adjacent to

The Track, whether such loss, damage, injury or death be caused or contributed to by the negligence of Railway Company, its agents or employees, or otherwise. . . .

863 S.W.2d at 144.

On June 25, 1988, Timothy McNeill, a Santa Fe employee, was unloading a coal train at the Smither's Lake plant. After McNeill unloaded the train, he noticed that the couplers on the last car and the caboose were misaligned and decided to manually adjust them. While attempting to align the couplers on the caboose, McNeill injured his back.

McNeill sued Santa Fe under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1988), alleging that Santa Fe negligently failed to provide a safe work place. He also alleged violations of the Federal Safety Appliance Acts (SAA), 45 U.S.C. § 2 (1988), which mandates that couplers on the cars and the caboose remain aligned so that they will automatically couple upon impact with the preceding or following car without the necessity of workmen having to go between the cars.[1] Santa Fe filed a general denial and asserted the defense of contributory negligence. Santa Fe also joined HL & P as a third-party defendant, claiming the right to contractual indemnity in the event Santa Fe incurred liability for McNeill's injury.

The jury answered the submitted questions favorably to McNeill. The jury also found that McNeill was 45% negligent and Santa Fe was 55% negligent. The trial court awarded McNeill $305,000, the full amount of damages, and ordered HL & P to indemnify Santa Fe based on the indemnity agreement. The trial court did not reduce McNeill's recovery by his contributory negligence because an SAA violation contributed to his injury. Under the FELA, an employee's award is not reduced by his or her contributory negligence if the employer's violation of an employee safety statute contributed to the injury. 45 U.S.C. § 53 (1988).

---

1. The SAA did not create a private cause of action for employees seeking damages for injuries resulting from a railroad's violation of the SAA. *Crane v. Cedar Rapids & I.C. Ry.*, 395 U.S. 164, 166, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1969). However, the FELA embraces claims of an employee based on a violation of the SAA. *Id.* Thus, an injured employee must sue his or her employer under the FELA for violations of the SAA.

HL & P appealed, arguing that the indemnity agreement did not encompass indemnity for strict liability. The court of appeals affirmed the judgment, stating that "HL & P presumably realized at the time it agreed to the indemnity clause that Santa Fe employees would use FELA to recover damages for their injuries." 863 S.W.2d at 146. The court further noted, "It was not unreasonable, given the broad language of the indemnity clause, for the trial court to construe the clause as covering Safety Appliance Acts-based FELA claims." *Id.* HL & P then sought review of the court of appeals' judgment from this Court, urging us to extend the express negligence doctrine we adopted in *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex.1987), to cases in which the indemnitee is charged with strict liability. The express negligence doctrine provides that "parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms." *Id.* at 708.

## II. THE SAFETY APPLIANCE ACT

Relying on *Urie v. Thompson*, 337 U.S. 163, 189, 69 S.Ct. 1018, 1034, 93 L.Ed. 1282 (1949), Santa Fe argues that an SAA violation is negligence per se encompassed by the indemnity agreement's express reference to negligence. HL & P, however, contends that a violation of the SAA creates strict liability not contemplated by the parties' agreement. Because of the confusion among courts as to the effect of a violation of the SAA, there is authority to support both arguments.[2] Some courts hold the view that SAA violations result in strict liability. *E.g., Illinois Cent. Gulf R.R. v. Int'l Paper Co.*, 824 F.2d 403, 405 (5th Cir.1987) ("A railroad is strictly liable under the FELA for injury caused by a violation of the SAA."); *Colorado Milling & Elevator Co. v. Terminal R.R. Ass'n*, 350 F.2d 273, 275 (8th Cir.1965) (rejecting the argument that SAA violations are negligence per se and holding that the SAA imposes an absolute duty in no way dependent upon negligence), *cert. denied*, 382 U.S. 989, 86 S.Ct. 563, 15 L.Ed.2d 476 (1966). Other courts have held that a violation of the SAA is negligence per se. *E.g., Chicago, M., St. P. & P. R.R. v. Alva Coal Corp.*, 365 F.2d 49, 54 (7th Cir.1966) (holding that violations of the SAA constitute negligence per se); *Dougall v. Spokane, P. & S. Ry.*, 207 F.2d 843, 848 (9th Cir.1953) (holding that a violation of the SAA is negligence), *cert. denied*, 347 U.S. 904, 74 S.Ct. 429, 98 L.Ed. 1063 (1954). This Court also has noted in passing that a violation of the SAA is negligence per se. *Missouri–Kansas–Texas R.R. v. Evans*, 151 Tex. 340, 250 S.W.2d 385, 392 (1952).

However, we believe the better view is that a SAA-based FELA claim is a strict liability claim. This approach best comports with the United States Supreme Court rulings on this issue which "early swept all issues of negligence out of cases under the Safety Appliance Act." *O'Donnell*, 338 U.S. at 390, 70 S.Ct. at 204. The SAA imposes an absolute duty on carriers which is "in no way dependent upon negligence and for the proximate results of which there is liability—a liability that cannot be escaped by proof of care or diligence." *Id.; see also Crane*, 395 U.S. at 166, 89 S.Ct. at 1708 (holding that an "injured employee is required to prove only the statutory violation and thus is relieved of the burden of proving negligence"); *Carter v. Atlanta & St. A.B. Ry.*, 338 U.S. 430, 434, 70 S.Ct. 226, 229, 94 L.Ed. 236 (1949) (holding that the SAA imposes an "absolute duty unrelated to negligence").

Thus, we hold that a railroad is strictly liable under the FELA for violations of the SAA. We overrule *Evans* to the extent it holds otherwise.

## III. CONSTRUING THE INDEMNITY AGREEMENT

HL & P relies on the rationale for the express negligence doctrine we adopted in *Ethyl* to support its argument that an indemnitee cannot recover for a loss or liability that the terms of the indemnity clause do not

---

**2.** *See O'Donnell v. Elgin, J. & E. Ry.*, 338 U.S. 384, 389, 70 S.Ct. 200, 203, 94 L.Ed. 187 (1949). This confusion results, at least in part, because a claim based on a violation of the SAA is a non-negligence claim which must be pursued by action under the FELA, a negligence-based statute. *Id.* at 391, 70 S.Ct. at 205.

expressly encompass. In *Ethyl*, we noted a trend toward more strict construction of indemnity contracts. 725 S.W.2d at 707. We held that "parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms." *Id.* at 708. In determining whether an agreement meets the express negligence test, we look to the four corners of the agreement. *Id.*

We apply a similar test in the strict products liability context. *See Dorchester Gas Corp. v. American Petrofina, Inc.*, 710 S.W.2d 541, 543 (Tex.1986). In *Rourke v. Garza*, 511 S.W.2d 331, 333 (Tex.Civ.App.—Houston [1st Dist.] 1974), *aff'd*, 530 S.W.2d 794 (Tex.1975), an equipment owner claimed the right to indemnity from the lessee whose employee was injured by a defect in the leased equipment. We affirmed the court of appeals' judgment, which denied indemnity to the owner because the lease agreement's indemnity clause was "completely silent as to defects in the leased equipment." *Id.* at 341. Thus, the court of appeals concluded that the indemnity clause of the lease "did not clearly require" the lessee to indemnify the owner against strict products liability. *Id.*

The facts in *Dorchester* were similar to the facts in *Rourke*. The indemnity clause provided indemnity for "all claims ... or liabilities arising from the use or operation" of a steam pump. *Dorchester*, 710 S.W.2d at 541. This Court found the clause unenforceable because the agreement did not "clearly and unequivocally" reflect the parties' intent to provide indemnity for liability resulting from the sale of a defective or unreasonably dangerous product. *Id.* at 543–44; *accord UMC, Inc. v. Coonrod Elec. Co.*, 667 S.W.2d 549, 555 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

We also stated in *Dorchester* that contracts providing indemnity against the consequences of negligence should be treated in the same manner as those indemnifying one against strict products liability. 710 S.W.2d at 543. This statement has led one commentator to suggest that "a corollary of the 'express negligence' rule should apply," so that indemnification for product defects must also be expressly stated in the parties' agreement. Richard L. Scheer, *Model Contractual Indemnity Provisions Effective to Protect an Indemnitee Against His Own Negligence or Other Fault*, 50 Tex.B.J. 602, 606 (1987).

There are compelling reasons to treat cases involving strict statutory liability in the same manner as cases involving negligence or strict products liability. First, the requirement that parties expressly state their intent to cover strict liability claims prevents the injustice that may occur when an innocent party incurs tremendous costs because of another's strict statutory liability. Such a result is possible when a party, itself not at fault, lacked fair notice of its potential liability under a less-than-specific indemnity clause. Indemnification against strict liability is an exception to usual business practices in the same manner as indemnifying against someone else's negligence. *Rourke*, 530 S.W.2d at 804. Contracts indemnifying an indemnitee against the consequences of strict liability involve an extraordinary shifting of the risk and "may have great financial impact on the parties." *Id.* Thus, fairness dictates against imposing liability on an indemnitor unless the agreement clearly and specifically expresses the intent to encompass strict liability claims.

Second, requiring parties to expressly state their intent to indemnify against strict liability claims prevents drafters from "devis[ing] novel ways of writing provisions which fail to expressly state the true intent of those provisions" and concealing that intent through the use of ambiguous language. *Ethyl*, 725 S.W.2d at 707. Such a requirement will in turn reduce the number of lawsuits to construe ambiguous indemnity agreements. *See id.* at 708.

Finally, an "express intent" rule is consistent with the SAA's goal of worker safety. A railroad that can shift liability for violations of the SAA to an indemnitor through the use of general language in an indemnity clause will have less of an incentive to provide a safe work place. The indemnitor, because of the general language in the indemnity agreement, may be unaware of its prospective liability under the SAA. As a consequence, it may fail to fulfill its responsibility to promote worker safety. Instead, if parties must

expressly state their intent to provide indemnity for strict liability claims, the party that assumes the duty of maintaining a safe work place will be aware of its responsibility and act accordingly.

■ Thus, we hold that parties to an indemnity agreement must expressly state their intent to cover strict liability claims in specific terms. Because the indemnity agreement between HL & P and Santa Fe makes no mention of strict liability, it does not extend to claims for indemnity based on strict liability. Therefore, Santa Fe is not entitled to indemnity under the agreement.

### IV.  COMPARATIVE INDEMNITY

■ Santa Fe next contends that the agreement entitles Santa Fe to contractual comparative indemnity to the extent of Santa Fe's negligence. If the jury had not determined that Santa Fe violated the SAA, Santa Fe still would have been partially liable for McNeill's damages based on the jury's finding that Santa Fe was 55% negligent. Because an SAA violation contributed to his injury, the trial court did not reduce McNeill's award by 45%, the percentage of his contributory negligence. Thus, Santa Fe argues that only 45% of McNeill's award can be attributed to SAA violations, entitling it to indemnity for 55% of McNeill's award, the amount attributable to the jury's negligence findings.

■ Parties may provide for comparative indemnity, but must expressly state their intent to do so in the agreement. *Ethyl,* 725 S.W.2d at 708. The indemnity agreement between HL & P and Santa Fe contains no provision for comparative indemnity. Therefore, we reject Santa Fe's argument.

### V.  CONCLUSION

Because the indemnity agreement does not expressly provide indemnity to Sante Fe, an indemnitee charged with strict liability, we reverse the judgment of the court of appeals and render judgment for HL & P.