**GENERAL AGENTS INSURANCE
COMPANY OF AMERICA,
INC., Appellant,**

v.

**Ahmed EL NAGGAR and El Naggar
Fine Arts Furniture, Inc.,
Appellees.**

No. 14–09–00641–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 3, 2011.

R. Brent Cooper, Michelle Elaine Rob-
berson, Katherine Lynn McClelland, Dal-
las, TX for appellant.

Benjamin Lewis Hall III, Robert L. Gal-
loway, Houston, TX, Jennifer Kurachek
Kenchel, Dallas, TX, Gary Neal Schumann,
Austin, TX, for appellees.

Panel consists of Chief Justice
HEDGES and Justices FROST and
CHRISTOPHER.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant General Agents Insurance Company of America, Inc. ("Gainsco") challenges the trial court's rendition of partial summary judgment in favor of appellees Ahmed El Naggar and El Naggar Fine Arts Furniture, Inc. (collectively "El Naggar") in El Naggar's suit against Gainsco to recover insurance proceeds. Gainsco contends that the trial court erred in granting El Naggar's partial summary-judgment motion and implicitly denying Gainsco's cross-motion on the ground that a buy-back agreement between Gainsco and Traxel Construction, Inc. is void as against public policy. We reverse and render.

### I. FACTUAL AND PROCEDURAL BACKGROUND

El Naggar contracted with Frederick Bell, owner of Traxel Construction, Inc., for the construction of a steel building and a concrete slab. Appellant Gainsco issued a commercial general liability (CGL) policy to Traxel. Problems arose over the construction project and, in 2001, El Naggar filed suit against Bell, Traxel, and other parties.[1]

The first trial ended in a mistrial. Just after the mistrial, Gainsco and Traxel entered into a "buy-back agreement."[2] Under the terms of the agreement, Gainsco repurchased Traxel's CGL policy for $50,000, and Traxel released Gainsco from any and all claims or demands arising out of the policy. The lawsuit proceeded to a second trial, which resulted in a judgment in El Naggar's favor against Traxel only.[3]

El Naggar then sued Gainsco along with other of Traxel's insurers to collect the judgment.[4] El Naggar alleged several claims against Gainsco, including one in which it sought a declaratory judgment that the buy-back agreement between Gainsco and Traxel violated either the Texas Insurance Code, Texas public policy, or the Texas Uniform Fraudulent Transfer Act, and is unconscionable. The parties filed cross-motions for summary judgment on the validity of the policy buy-back agreement, arguing over whether the agreement is void as against public policy.[5]

---

1. The summary-judgment evidence includes two reservation-of-rights letters from Gainsco to Traxel in relation to the suit.

2. The named parties to the buy-back agreement are Gainsco, Traxel, and Bell, with Traxel and Bell collectively referred to as "Traxel."

3. The final judgment in the underlying suit states that "[b]ased upon the joint and several liability against Traxel Construction Inc., the Plaintiff abandons all claims against Frederick Bell." It also states that all other defendants had either settled their claims or had been nonsuited.

4. In the live petition, El Naggar states that it is suing in its capacity individually, as judgment creditor, and as assignee of claims possessed by Traxel.

5. On February 6, 2009, the trial court ordered segregation of in-camera documents that were sealed when filed. The documents are (1) El Naggar's reply to Gainsco's response to the motion for summary judgment/response to Gainsco's cross-motion, (2) El Naggar's procedural and evidentiary objections and El Naggar's motion to strike Gainsco's summary-judgment evidence, (3) Gainsco's reply to El Naggar's response to Gainsco's cross-motion and response to El Naggar's motion for leave to file deposition testimony, (4) Gainsco's response to El Naggar's procedural and evidentiary objections and motion to strike, (5) Gainsco's motion for leave to file a reply to El Naggar's response to Gainsco's cross-motion and response to El Naggar's motion for leave to file deposition testimony, and (6) Gainsco's objections to El Naggar's summary-judgment evidence and motion for ruling on objections lodged at a deposition. These documents were filed in a supplemental clerk's record and were not filed under seal in this court.

On September 11, 2006, the trial court granted El Naggar's motion for summary judgment, declared the buy-back agreement void, and ordered that the CGL policy was not affected by the buy-back agreement. On June 13, 2007, Gainsco filed a motion to sever the interlocutory summary-judgment ruling and abate El Naggar's remaining claims pending appeal of that ruling. On July 10, 2007, the trial court denied the motion.

Gainsco subsequently filed a petition for writ of mandamus requesting this court to order the Honorable Elizabeth Ray to (1) vacate her July 10, 2007 order, (2) sever the interlocutory summary judgment to render it final and appealable, and (3) abate the proceedings on El Naggar's remaining claims. On May 15, 2008, we issued a substitute opinion that conditionally granted the petition for writ of mandamus and directed the trial court to vacate its July 10, 2007 order denying Gainsco's motion to sever and abate, and grant the same.

On May 21, 2008, El Naggar filed a nonsuit, without prejudice, on its claims for declaratory relief, specifically noting that the nonsuit included the declaratory-judgment relief relating to the buy-back agreement. On May 23, 2008, Judge Ray signed an order taking notice of the nonsuit. On June 27, 2008, the trial court granted the severance and abatement in accordance with this court's opinion. The June 27, 2008 order, however, severed the interlocutory summary judgment into an "A" case that already existed. Gainsco filed its first notice of appeal on July 14, 2008.[6]

El Naggar filed yet another nonsuit after the severance, specifically seeking to nonsuit without prejudice the partial summary-judgment ruling on the buy-back agreement. On July 14, 2008, the Honorable John T. Wooldridge, sitting for Judge Ray, signed an order taking notice of the nonsuit and dismissing the severed action from the trial court's docket. On August 6, 2008, Judge Wooldridge signed an amended order of severance that (1) vacates Judge Ray's June 27, 2008 order granting severance and abatement and (2) severs the declaratory-judgment claim relating to the buy-back agreement into "B." In that order, Judge Wooldridge states that El Naggar's nonsuit "moots" the partial summary-judgment ruling in El Naggar's favor; however, Judge Wooldridge did not vacate the partial summary-judgment order. In a separate order, Judge Wooldridge lifted the abatement and set El Naggar's remaining claims for trial on December 8, 2008.[7] Gainsco filed its second notice of appeal on August 15, 2008.

On July 31, 2008, Gainsco filed a motion to enforce the writ conditionally granted in our May 15, 2008 substitute opinion. This court granted the motion on September 9, 2008, and ordered the sitting judge of the 165th District Court to abate the proceedings with regard to El Naggar's remaining claims pending this appeal. El Naggar filed a motion for rehearing and rehearing en banc, contending that the nonsuit made moot this court's granting of the petition for writ of mandamus to sever the declaratory-judgment claim and abate El Naggar's remaining claims. The motions were overruled. El Naggar filed a petition for writ of mandamus with the Texas Supreme

---

6. In the notice of appeal, Gainsco states that it submitted a corrected proposed order of severance and abatement using "B," but the trial court had not yet signed the order at the time the notice of appeal was filed.

7. This order is not dated, but the file stamp indicates it was filed on July 23, 2008.

556

Court, which was denied on March 27, 2009.

## II. ANALYSIS

### A. The Effect of Nonsuit on the Partial Summary–Judgment Ruling

■ As a preliminary matter, El Naggar challenges this court's jurisdiction, contending that there is no longer a justiciable controversy because El Naggar filed a nonsuit without prejudice on whether the buy-back agreement is void as against public policy, rendering the partial summary-judgment ruling on that issue moot.[8]

■ The mootness doctrine prevents courts from rendering advisory opinions, and under article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions. *See Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex.2000) (per curiam). "[A] controversy must exist between the parties at every stage of the legal proceedings, including the appeal." *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 427 (Tex.2002) (quoting *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex.2001)). An issue may become moot when a party seeks a ruling on some matter which, when rendered, would not have any practical legal effect on a then-existing controversy. *See In re H & R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 900 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding).

Here, El Naggar filed a nonsuit, without prejudice, on its claims for declaratory-judgment relief after receiving a favorable ruling on whether the buy-back agreement

between Gainsco and Traxel is void as against public policy. At the time, El Naggar's eleventh amended petition included a request for declaratory judgment (1) to declare that the buy-back agreement between Gainsco and Traxel violates either the Texas Insurance Code, Texas public policy, or the Texas Uniform Fraudulent Transfer Act, and is unconscionable; (2) to determine the rights, status or other legal relations between El Naggar and other parties to the case; and (3) to determine various insurance responsibilities. The trial court took notice of the nonsuit. El Naggar then filed its twelfth amended petition omitting the declaratory-judgment claims. The trial court severed the issue of the validity of the buy-back agreement adjudicated in the partial summary-judgment ruling. After severance, El Naggar filed another nonsuit without prejudice, seeking specifically to nonsuit the partial summary-judgment ruling. The trial court took notice of El Naggar's nonsuit and dismissed the action from the docket. The trial court later vacated the first severance order and severed "the non-suited and moot claims and orders" into action "B."

■ A nonsuit does not vitiate a decision on the merits, including a partial summary judgment, unless the decision on the merits is set aside by the trial court. *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 854–55 (Tex.1995) (per curiam). "Once a judge announces a decision that adjudicates a claim, that claim is no longer subject to the plaintiff's right to nonsuit." *Id.* at 855. This reasoning is

---

8. Both parties assume that the nonsuit is controlled by Texas Rule of Civil Procedure 162. At least one court has stated that a Rule 162 nonsuit applies to a dismissal of the entire case and does not authorize a plaintiff to dismiss some, but not all, claims against a defendant. *See C/S Solutions, Inc. v. Energy Maint. Servs. Group LLC*, 274 S.W.3d 299, 306 (Tex.App.-Houston [1st Dist.] 2008, no pet.). *But see Cook v. Nacogdoches Anesthesia Group, L.L.P.*, 167 S.W.3d 476, 482 (Tex.App.-Tyler 2005, no pet.) (citing Rule 162 for the proposition that a party may choose to take a nonsuit as to some claims without nonsuiting the rest of the pending claims).

rooted in the doctrines of res judicata and collateral estoppel, which "promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation" of matters that have already been decided. *In re Team Rocket, L.P.,* 256 S.W.3d 257, 260 (Tex.2008) (orig. proceeding) (quoting *Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 801 (Tex.1994)).

El Naggar contends that these rules do not apply here because El Naggar received a *favorable* ruling on whether the buy-back agreement violates public policy. Favorable or not, that issue had already been adjudicated. *See Johnson v. Evans,* No. 14–08–00610–CV, 2010 WL 431293, at *4 (Tex.App.-Houston [14th Dist.] Feb. 9, 2010, pet. denied) (mem. op.) (citing *Alvarado* and holding that nonsuit could not, and did not, alter earlier favorable ruling in partition action). The nonsuit on the issue of whether the buy-back agreement is void as against public policy simply came too late. *See Alvarado,* 892 S.W.2d at 855. Therefore, the partial summary-judgment ruling was not affected by the nonsuit, regardless of the fact that the summary-judgment ruling was in El Naggar's favor. Consequently, rejecting El Naggar's contention that this appeal is moot based on its purported nonsuit, we proceed with Gainsco's issue.

**B. Whether the Buy–Back Agreement Violates Public Policy**

In a single issue, Gainsco argues that the trial court erred in granting El Naggar's motion for partial summary judgment and implicitly denying Gainsco's cross-motion on the ground that the buy-back agreement is void as against public policy.

■■ Under Texas Rule of Appellate Procedure 33.1(a)(2)(A), error may be preserved when the trial court rules on a motion implicitly. *See* Tex.R.App. P.

33.1(a)(2)(A). When parties present cross-motions that are opposed and mutually exclusive, an order that grants one motion may implicitly deny the other. *See Walker v. Gutierrez,* 111 S.W.3d 56, 60 n. 1 (Tex. 2003) (granting motion to dismiss implicitly denied motion seeking grace period); *Salinas v. Rafati,* 948 S.W.2d 286, 288 (Tex.1997) (granting motion to disregard jury findings automatically denied motion for judgment on those findings). Gainsco included its cross-motion for partial summary judgment with its response to El Naggar's motion for partial summary judgment. Gainsco contends in both the cross-motion and the response that the buy-back agreement is not void as against public policy. Under these circumstances, we can infer that the trial judge was actually aware of Gainsco's cross-motion when it addressed and decided El Naggar's motion. *See Walker,* 111 S.W.3d at 59 (response included motion for grace period). Therefore, this issue is preserved on appeal.

■ Declaratory judgments rendered by summary judgment are reviewed under the same standards as govern summary judgments generally. *Lidawi v. Progressive County Mut. Ins. Co.,* 112 S.W.3d 725, 730 (Tex.App.-Houston [14th Dist.] 2003, no pet.). We review the trial court's grant of summary judgment *de novo. Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). In a traditional motion for summary judgment, the movant carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000) (per curiam). Once the movant produces sufficient evidence conclusively establishing its right to summary judgment, the burden of proof shifts to the nonmovant to present evidence sufficient to raise a fact issue.

*Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995). In reviewing a traditional summary judgment, we examine "the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Yancy v. United Surgical Partners Int'l, Inc.,* 236 S.W.3d 778, 782 (Tex.2007) (quoting *City of Keller v. Wilson,* 168 S.W.3d 802, 824 (Tex. 2005)).

When, as here, both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary-judgment evidence, determine all questions presented, and render such judgment as the trial court should have rendered. *Comm'rs Court v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997); *see Frank's Int'l, Inc. v. Smith, Int'l, Inc.,* 249 S.W.3d 557, 559 nn. 2–3 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (applying standard of review applicable to cross-motions when one motion granted and one motion implicitly denied on existence of valid contract). We may affirm the judgment, reverse and render a judgment for the other side if appropriate, or reverse and remand if neither party has met its summary-judgment burden. *Grynberg v. Grey Wolf Drilling Co., L.P.,* 296 S.W.3d 132, 136 (Tex.App.-Houston [14th Dist.] 2009, no pet.). Each party bears the burden of establishing that it is entitled to judgment as a matter of law; neither side can prevail based on the other's failure to discharge its burden. *Id.*

■■■■ Whether a contract is contrary to public policy is a question of law. *Hoover Slovacek LLP v. Walton,* 206 S.W.3d 557, 562 (Tex.2006). In general, Texas law favors voluntary settlement of disputes and, thus, will give a properly executed release legal force. *See Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 178 (Tex.1997); *see also In re Prudential*

*Ins. Co. of Am.,* 148 S.W.3d 124, 129 & n. 11 (Tex.2004) (orig. proceeding) ("As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy."). A release, just as any other contract, however, is subject to the public policy of the State. *Ranger Ins. Co. v. Ward,* 107 S.W.3d 820, 827 (Tex.App.-Texarkana 2003, pet. denied). The Legislature determines public policy through statutes. *Fairfield Ins. Co. v. Stephens Martin Paving, LP,* 246 S.W.3d 653, 665 (Tex.2008). In addition, the Texas Supreme Court has determined that certain agreements violate public policy. *Id.* "[T]o determine whether a contract violates public policy, we consider the policies underlying any applicable statutes." *Lawrence v. CDB Servs., Inc.,* 44 S.W.3d 544, 555 (Tex.2001) (superceded by statute on other grounds). In examining an agreement to determine if it is against public policy, we look to see whether the agreement has a tendency to injure the public good. *Sacks v. Dallas Gold & Silver Exch., Inc.,* 720 S.W.2d 177, 180 (Tex.App.-Dallas 1986, no writ).

■■■■ Gainsco and Traxel entered into a buy-back agreement after the first trial between El Naggar and Traxel ended in a mistrial. Under the terms of the agreement, Gainsco repurchased the CGL policy it had issued to Traxel for a sum of $50,000 in exchange for Traxel's agreement to release Gainsco from any and all claims arising out of the policy. In its motion for summary judgment, El Naggar contends that the buy-back agreement is contrary to public policy because Gainsco and Traxel were aware of El Naggar's claims when they entered into the buy-back agreement, and the execution of the buy-back agreement leaves El Naggar without a remedy. El Naggar also argues that insurance was a prerequisite to Traxel's being awarded the construction contract, a fact the parties

dispute, and that the buy-back agreement circumvents that agreement.

In its motion for summary judgment, El Naggar relies heavily on the Texarkana case *Ranger Insurance Company v. Ward* to establish that the buy-back agreement between Gainsco and Traxel is void as against public policy. The *Ranger* case, however, is distinguishable. In that case, Ranger issued an insurance policy to Thompson Flying Services. *Ward,* 107 S.W.3d at 823. Thompson applied a potent herbicide by aerial application to ranch property. *Id.* After the herbicide drifted onto a neighboring property and destroyed a cotton crop, the landowners sued Thompson Flying Services. *Id.* Ranger and Thompson entered into a release, under which Ranger paid Thompson $100,000 in exchange for his retroactively releasing Ranger from its obligations under the policy as of the date of issuance. *Id.* The landowners obtained a judgment against Thompson and then sued Ranger. *Id.* at 824. The landowners sought a declaration that the release was void on two grounds, one of which was that the release was void as against public policy. *Id.* The trial court granted the landowners' partial summary judgment on this and another ground. *Id.*

The controlling factor in *Ranger* was that the insurance policy was statutorily required. *Id.* at 825 ("Section 76.111 of the Texas Agriculture Code required that a commercial aerial applicator of pesticide maintain a policy of liability insurance in a minimum amount or provide a surety bond in that same amount."). The court stated that central to the interpretation and application of the compulsory insurance statute was its expression of purpose, i.e. "protecting persons who may suffer damages as a result of the operations of the applicant." *Id.* at 825, 829 (citing former Tex. Agric. Code Ann. § 76.111(a)(2)). The court held that Ranger's attempt to circumvent the statute and its purpose violated public policy. *Id.* at 829–30.

El Naggar has not cited a statute requiring the CGL policy issued in this case.[9] Therefore, *Ranger* is distinguishable because it involved circumstances not present here: "two parties, both aware of their likely liability for Landowners' claims, entering into a release in which the two parties attempt to contract away liability and agree to leave the injured parties without the remedy *intended by the statute in question.*" *Id.* at 829 (emphasis added). Nor does El Naggar cite any binding authority, either statutory or common law, stating that the buy-back agreement of a CGL policy under the circumstances presented here is void as against public policy.[10] Without strong public-poli-

9. In its reply to Gainsco's response to the motion for summary judgment/response to Gainsco's cross-motion for summary judgment, El Naggar cites generally article 21.21, section 4(10) of the Texas Insurance Code as the authority that CGL insurance is for the public's benefit. *See* Act of May 10, 2001, 77th Leg., R.S., ch. 290 § 1, 2001 Tex. Gen. Laws 548, 550–51, repealed and recodified by Act of May 22, 2003, 78th Leg., R.S., ch. 1274 §§ 2, 26(a)(1), 2003 Tex. Gen. Laws 3611, 3662, 4138 (current version at Tex. Ins.Code Ann. § 541.060 (West 2009)). First, it is unclear from the record whether the trial court considered the reply/response. The trial court's order states that it considered El Nag-

gar's motion, the response to the motion, and the arguments of counsel. We do not have a record of the summary-judgment hearing. Second, neither article 21.21, section 4(10) of the Texas Insurance Code nor the current version at Texas Insurance Code section 541.060 states that a CGL policy like the one in this case is required for the public's benefit.

10. El Naggar states that the summary-judgment evidence establishes that El Naggar relied on the fact that Traxel had insurance and that this reliance makes the buy-back agreement between Gainsco and Traxel void as against public policy. First, assuming that El

cy reasons against enforcement of the buy-back agreement, we decline to declare the buy-back agreement in this case void as against public policy. *See Lawrence*, 44 S.W.3d at 553 ("Given the lack of any clear legislative intent to prohibit [the agreements] . . . and absent any claim . . . of fraud, duress, accident, mistake, or failure or inadequacy of consideration, we decline to declare them void on public policy grounds."). The trial court erred by granting El Naggar's motion for partial summary judgment and implicitly denying Gainsco's cross-motion. Accordingly, we sustain Gainsco's issue. We reverse and render judgment declaring that the buy-back agreement is not void as against public policy.

Gainsco also requests that we render judgment that the buy-back agreement between Gainsco and Traxel is valid and enforceable; however, Gainsco did not plead a declaratory-judgment counterclaim on the validity of the buy-back agreement and does not contend that it did on appeal. In its cross-motion for summary judgment, Gainsco prays for a declaration that the buy-back agreement is not void as against public policy.[11] Therefore, we decline Gainsco's request to render judgment that the buy-back agreement is valid and enforceable and only render a declaration that the buy-back agreement is not void as against public policy.

### III. Conclusion

We hold that the trial court erred by granting El Naggar's motion for partial summary judgment and implicitly denying Gainsco's cross-motion on the ground that the buy-back agreement between Gainsco and Traxel is void as against public policy. We reverse and render judgment declaring that the buy-back agreement is not void as against public policy.

Naggar is referring to the deposition testimony of Ahmed El Naggar to support this reliance argument, the record indicates that El Naggar requested leave to include the deposition as part of its summary-judgment evidence, but the record does not include a ruling by the trial court on this request. Second, El Naggar cites no authority for the proposition that third-party reliance makes the buy-back agreement void as against public policy. In addition, in its reply/response in the trial court, El Naggar makes a general allegation that the buy-back agreement was not the result of an arm's length transaction. El Naggar does not cite evidence or authority to support its allegation that lack of an arm's length transaction renders the buy-back agreement void as against public policy.

11. Any failure by Gainsco to seek this relief in its pleadings does not present a problem because the issue was tried by consent. *See Marzo Club, LLC v. Columbia Lakes Homeowners Ass'n*, 325 S.W.3d 791, 798 n. 3 (Tex. App.-Houston [14th Dist.] 2010, no pet.).