**Affirmed in Part, Reversed in Part, and Remanded, and Memorandum Majority Opinion and Memorandum Concurring Opinion filed October 29, 2020.**



In the

# Fourteenth Court of Appeals

## NO. 14-18-00879-CV

**PIONEER ENERGY SERVICES CORPORATION, Appellant**

**v.**

**BURLINGTON INSURANCE COMPANY AS SUBROGREE OF PREMIER COIL SOLUTIONS, INC., Appellee**

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-12120**

## MEMORANDUM MAJORITY OPINION

This case involves the enforceability and scope of an indemnity agreement. Ruling on competing motions for summary judgment, the trial court determined that appellant Pioneer Energy Services Corporation was contractually obligated to indemnify and defend appellee Burlington Insurance Company as subrogee of Premier Coil Solutions, Inc. for claims of negligence, gross negligence, and strict

products liability brought by a Pioneer employee against Premier. In three issues, Pioneer argues that the indemnity clause does not meet fair-notice requirements, relieving Pioneer of its obligation to indemnify, and that the clause did not impose an independent duty to defend on Pioneer.

We conclude the trial court erred in determining that the indemnity clause obligated Pioneer to indemnify or defend as to the employee's strict-products-liability claim and reverse the trial court's judgment as to that claim. We otherwise affirm the trial court's judgment as challenged on appeal and remand the case for further proceedings with instructions for the trial court to render partial summary judgment in Pioneer's favor in accordance with our judgment.

## I.    BACKGROUND

Pioneer's predecessor in interest, Go Coil, LLC, agreed to buy a coiled-tubing unit from Premier.[1] The purchase agreement comprises three proposals signed on the same day, each containing an identical page after the signature page titled "WARRANTY TERMS & CONDITIONS." Paragraph 13 of the warranty page states:

> **13.    INDEMNITY (INCLUDING FOR NEGLIGENCE): BUYER HEREBY ASSUMES AND AGREES TO INDEMNIFY, DEFEND, PROTECT, SAVE, KEEP, AND HOLD HARMLESS SELLER, ITS AGENTS, EMPLOYEES, SUBCONTRACTORS, AND INVITEES FROM AND AGAINST ANY AND ALL LOSSES, DAMAGES, INJURIES, CLAIMS, CAUSES OF ACTION, LIABILITIES, DEMANDS AND EXPENSES (INCLUDING ATTORNEY FEES AND OTHER LEGAL**

---

[1] Pioneer later acquired Go Coil and assumed its contractual rights and obligations. The parties stipulated that Pioneer is bound by the purchase agreement as Go Coil's successor in interest.

**EXPENSES) OF WHATSOEVER KIND AND NATURE, FOR INJURY TO, OR ILLNESS OR DEATH OF ANY PERSON AND FOR ALL DAMAGE TO, LOSS OR DESTRUCTION OF PROPERTY (COLLECTIVELY LOSSES), RELATING TO, CONNECTED WITH IN ANYWAY, ARISING OUT OF, OR ON ACCOUNT OF THE GOODS OR SERVICES PURCHASED HEREUNDER, INCLUDING, WITHOUT LIMITATION, ANY SUCH LOSSES CAUSED OR OCCASIONED BY ANY NEGLIGENT ACT OR OMISSION OF SELLER, ITS OFFICERS, AGENTS, EMPLOYEES, SUBCONTRACTORS, INVITEES OR LICENSEES.** The foregoing Indemnity is a material part of this transaction, supported by and in consideration of a reduction in the purchase price and is intended to apply notwithstanding the joint or concurrent negligence of Seller.

A Pioneer employee filed a lawsuit alleging he had been injured by the coiled-tubing unit and asserting causes of action for negligence, gross negligence, and strict products liability against the manufacturer, Premier. Premier requested that Pioneer defend and indemnify it in the employee's lawsuit, but Pioneer did not do so. Premier settled the lawsuit for $800,000.

Burlington, Premier's liability-insurance carrier, filed this lawsuit as Premier's subrogee, seeking costs of settlement and defense of the employee's lawsuit from Pioneer. Burlington and Pioneer filed cross-motions for summary judgment on the issues of whether Pioneer owed indemnity for the costs of settlement and defense under the purchase agreement and, if not, whether the agreement imposed a separate duty to defend. The trial court granted Burlington's motion for summary judgment "in all respects," stating that the agreement "contain[s] valid and enforceable defense and indemnity provisions that comply with the fair notice requirements" and determining that Pioneer "breached the agreements by failing to defend and indemnify" Premier. In its final judgment, the

3

trial court ordered that Burlington, as Premier's subrogee, recover $1 million from Pioneer, the amount stipulated by the parties as covering the costs of settlement and defense of the employee's lawsuit.[2]

## II. ANALYSIS

### A. Express-negligence test

In its first issue, Pioneer argues that the indemnity clause in the purchase agreement is unenforceable because it does not meet the requirements of the express-negligence test with regard to the employee's claims for strict liability and gross negligence.[3] Risk-shifting provisions such as indemnity clauses must satisfy two fair-notice requirements: (1) the express-negligence test and (2) conspicuousness. *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004); *Littlefield v. Schaefer*, 955 S.W.2d 272, 274 (Tex. 1997). Under the express-negligence test, a party contracting for indemnity from the consequences of its own negligence must express that intent in specific terms within the four corners of the contract. *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994). The express-negligence test was established by the supreme court "to cut through the ambiguity" of indemnity provisions, thereby reducing the need for satellite litigation regarding interpretation of indemnity clauses. *Id.* (quoting *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987)). The express-negligence requirement is not an affirmative defense but a rule of contract interpretation and, accordingly, is determinable as a matter of law. *Id.*

---

[2] The trial court's final judgment states, "This order disposes of all parties and claims and is therefore a final judgment." *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001).

[3] Pioneer did not argue in the trial court, and does not argue here, that the indemnity clause does not meet the express-negligence requirement regarding the negligence claim asserted by the employee.

## 1.    Strict liability

Pioneer first argues that the indemnity clause does not pass the express-negligence test as to the employee's claim of strict products liability. Although titled express *negligence*, the test applies equally to indemnity for strict-liability claims. *See Houston Lighting & Power Co. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 890 S.W.2d 455, 458–59 (Tex. 1994) (applying express-negligence test to strict-liability claim).[4]

In *Houston Lighting & Power*, the supreme court held an indemnity agreement unenforceable as to strict-liability claims, concluding that when an agreement "makes no mention of strict liability, it does not extend to claims for indemnity based on strict liability." *Id.* at 459. In reaching its conclusion, the supreme court cited with approval *Rourke v. Garza*, in which the First Court of Appeals denied indemnity for strict-liability claims to an equipment owner because the indemnity clause at issue was "completely silent as to defects in the leased equipment." 511 S.W.2d 331, 341 (Tex. Civ. App.—Houston [1st Dist.] 1974), *aff'd*, 530 S.W.2d 794 (Tex. 1975); *see Houston Lighting & Power*, 890 S.W.2d at 458 (discussing *Rourke*). Accordingly, the clause "'did not clearly require' the lessee to indemnify the owner against strict products liability." *Houston Lighting & Power*, 890 S.W.2d at 458 (quoting *Rourke*, 511 S.W.2d at 341).

---

[4] Pioneer points out that a case from this court decided after *Houston Lighting & Power* states that "the express negligence doctrine does not apply to non-negligent actions." *English v. BGP Int'l, Inc.*, 174 S.W.3d 366, 375 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see also DDD Energy, Inc. v. Veritas DGC Land, Inc.*, 60 S.W.3d 880, 885 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("[T]he express negligence component of the fair notice requirements does not apply where an indemnitee is seeking indemnification from claims not based on the negligence of the indemnitee."). Our court has since recognized that "the express-negligence rule applies to indemnification for strict liability claims." *AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 666–67 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Houston Lighting & Power*, 890 S.W.2d at 459).

Here, as in *Houston Lighting & Power*, the indemnity clause does not mention strict liability or products liability. *See id.* at 459. Burlington, citing cases for the proposition that an indemnity provision does not need to use the word "negligence" to cover negligence claims,[5] argues that language in the indemnity clause that "Buyer . . . agrees to indemnify . . . seller . . . from and against any and all . . . causes of action . . . for injury to . . . any person . . . arising out of, or on account of the goods . . . purchased hereunder" is sufficiently specific to cover the strict-products-liability claim asserted here. We disagree. *Houston Lighting & Power* makes no allowance for indemnity for strict-liability claims stemming from provisions that do not use the term "strict liability." *See id.* (when agreement "makes no mention of strict liability, it does not extend to claims for indemnity based on strict liability").[6] Even assuming an indemnity provision may cover strict products liability without stating "strict liability" or "products liability," the clause at issue here includes no language, such as "defect" or "defective," that might alert

---

[5] *See, e.g.*, *Lehmann v. Har-Con Corp.*, 76 S.W.3d 555, 562 n.3 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("Indeed, courts have held that the express negligence doctrine does not require that the indemnity provision use the specific word 'negligence.'"). *But see, e.g.*, *Lee Lewis Const., Inc. v. Harrison*, 64 S.W.3d 1, 21 n.13 (Tex. App.—Amarillo 1999) ("Though no case we have found clearly states it, we nevertheless interpret *Ethyl* and its progeny as requiring the parties to actually include the word 'negligence' or some synonym thereof in the indemnification agreement before the express negligence rule is satisfied."), *aff'd*, 70 S.W.3d 778 (Tex. 2001).

[6] A federal court applying Texas law reached the same conclusion based on similar language. In *Air Products & Chemicals, Inc. v. Hillman Shrimp & Oyster Co.*, Air Products sought indemnity from Hillman for strict-liability claims based on indemnity provisions stating that "[Hillman] will defend, indemnify and save harmless [Air Products] from any and all losses, damages and claims whatsoever which may arise from [Hillman's] possession or use of the Equipment" and covering "any form of action, lawsuit or claim . . . related in any way to the Product or Equipment supplied by [Air Products]." No. H-07-4297, 2009 WL 10692113, at *7 (S.D. Tex. Feb. 17, 2009). Applying *Houston Lighting & Power*, the United States District Court for the Southern District of Texas reasoned that "[n]othing in the language of either provision states that Hillman expressly agrees to defend and indemnify Air Products for claims based on strict liability," and concluded that the agreement did not meet the express-negligence requirement for strict-liability claims. *Id.*

the would-be indemnitor that it was assuming risk for future claims of strict products liability. *See Rourke*, 511 S.W.2d at 341 (indemnity provision unenforceable regarding strict products liability because provision was "completely silent as to defects in the leased equipment"). We conclude that the indemnity clause does not pass the express-negligence test regarding the strict-liability claim at issue here.

## 2.    All-or-nothing indemnity

Having concluded the indemnity clause does not encompass strict-liability claims, we next address Pioneer's argument that, "[i]f an indemnity agreement covers some claims but not others, it is unenforceable [as to any claim] because enforceability is determined as a matter of law from the pleadings, not from the outcome of the underlying suit or a subsequent trial." The resolution of this matter determines to what extent we must address additional arguments concerning fair notice.[7]

We begin by noting that we have not applied such a rule in the past. Instead, when faced with provisions in which the express-negligence test bars indemnity for some claims but not others, we have enforced the indemnity provision for claims within the provision's coverage while barring indemnity for claims outside its coverage. *See DDD Energy*, 60 S.W.3d at 885 (although express-negligence test barred indemnity for negligence, trial court erred by determining that indemnity provision was unenforceable for other claims within provision's scope).[8]

---

[7] As above, we note that Pioneer does not argue that the indemnity clause does not cover the employee's negligence claim.

[8] While the "other claims" in *DDD Energy* were not subject to the express-negligence requirement as in our case, *DDD Energy* nonetheless presents the same question we are faced with here: is an indemnity clause enforceable at all when one, but not all, claims asserted fall outside the scope of the clause after application of the express-negligence test? *See* 60 S.W.3d at 885.

Pioneer argues that the supreme court's decisions in *Fisk* and *Houston Lighting & Power* support its position. We disagree. *Fisk* addressed the issue of whether a separate duty to defend a claim may arise if the claim does not meet the express-negligence test for indemnity, not the interplay of claims when some fall within the scope of the indemnity clause and others do not. *See* 888 S.W.2d at 814–16. In *Houston Lighting & Power*, after the supreme court determined that the indemnity provision in question did not meet the requirements of the express-negligence test for strict-liability claims, it considered separately the question of whether the indemnity provision covered comparative indemnity for negligence claims. *See* 890 S.W.2d at 459. Noting the parties could have contracted for indemnity for comparative negligence, the court determined they had not done so with the specificity required by the express-negligence test. *See id.* While the court determined that no indemnity was owed for comparative negligence, it did not do so because the strict-liability claim had failed the express-negligence test, as Pioneer asserts. *See id.* Rather, the court decided the issue based on a separate analysis of the comparative-negligence claim under the express-negligence test, an analysis that would have been unnecessary under the all-or-nothing approach advocated by Pioneer. *See id.* We reject Pioneer's argument that because the indemnity clause does not cover strict-liability claims it is unenforceable as to any claim.

### 3. Gross negligence

We move next to Pioneer's argument that the indemnity clause does not pass the express-negligence test for gross-negligence claims. Pioneer, however, did not present this theory to the trial court in its summary judgment motion, so we cannot consider it on appeal as a ground for reversal. Tex. R. Civ. P. 166a(c); Tex. R. App. P. 33.1(a); *see Madeksho v. Abraham, Watkins, Nichols & Friend*, 57 S.W.3d

448, 453 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("We do not consider on appeal grounds not raised in the trial court in opposition to a summary judgment motion.") (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex. 1979)).

Concluding our analysis of Pioneer's first issue, we hold the trial court erred in determining the indemnity clause passes the express-negligence test as to the strict-products-liability claim at issue. We sustain Pioneer's first issue in that regard and overrule the remainder of Pioneer's first issue.

## B.    Duty to defend

In its second issue, Pioneer contests Burlington's argument that Pioneer owed a separate duty to defend claims not meeting the express-negligence requirement.[9] Burlington argues that, because the indemnity clause states that Pioneer will both "indemnify" and "defend" Burlington, Pioneer must reimburse Burlington for costs of defense even if Burlington is not entitled to indemnity. In *Fisk*, however, the supreme court rejected this logic. *See* 888 S.W.2d at 814–16. *Fisk*, like our case, involves an indemnity clause that promises both to indemnify and defend. *Id.* at 814. As here, the indemnitees argued that, even if the clause did not meet express-negligence requirements for indemnity, it nonetheless imposed a separate duty to pay the costs of defense. *See id.* at 814–15. The supreme court held that, when the claim at issue is subject to the express-negligence test, "[a]bsent a duty to indemnify there is no obligation to pay attorney's fees." *Id.* at 815 (explaining that to hold otherwise "would leave indemnitors liable for a cost resulting from a claim of negligence which they did not agree to bear").

---

[9] While it is not entirely clear whether the trial court ruled on this argument, when reviewing a summary judgment, "the court of appeals should consider all grounds that the trial court rules on and may consider grounds that the trial court does not rule on in the interest of judicial economy." *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996).

Burlington argues that this court's decision in *English* compels a different result. In *English*, this court distinguished *Fisk* on the grounds that *Fisk* only involved claims encompassed by the express-negligence test. *See English*, 174 S.W.3d at 375 (citing *Fisk*, 888 S.W.2d at 814). By contrast, in *English*, there were additional claims (including trespass) that were not subject to the test and from which a separate duty to defend could arise. *See id.* Here, however, the only claims at issue are subject to the express-negligence test, and accordingly this case is governed by the reasoning of *Fisk*, not *English*. We conclude that Pioneer did not owe Burlington costs of defense separate and apart from the obligation to indemnify.

We sustain Pioneer's second issue.

## C.    Conspicuousness

In its third issue, Pioneer argues that the indemnity clause is not sufficiently conspicuous to provide fair notice. *See Reyes*, 134 S.W.3d at 192 (listing express negligence and conspicuousness as fair-notice requirements). Like express negligence, conspicuousness is a question of law. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509 (Tex. 1993). For a provision to be conspicuous, "something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Reyes*, 134 S.W.3d at 192 (quoting *Dresser*, 853 S.W.2d at 508). In evaluating conspicuousness in the fair-notice context, the supreme court has adopted the definition from the Uniform Commercial Code (UCC) defining "conspicuous" as written in such a way that a "reasonable person" against whom the provision is to operate "ought to have noticed it." *Dresser*, 853 S.W.2d at 510–11 (quoting UCC, Tex. Bus. & Com.

Code Ann. § 1.201(10)).[10] Language may satisfy the conspicuousness requirement by "appearing in larger type, contrasting colors, or otherwise calling attention to itself." *Reyes*, 134 S.W.3d at 192.

The indemnity clause here is one of fourteen numbered paragraphs on the warranty page that appears after the signature page. While all of the paragraphs have bolded headings written in all-capital letters, the indemnity clause is one of only three paragraphs in which portions of the body of the paragraph is bolded and all-capitalized, and is the only paragraph in which the majority of the text is printed in such a manner. The bolding and capitalization of the indemnity clause weigh in favor of conspicuousness. *See* UCC, Tex. Bus. & Com. Code Ann. § 1.201(10) (provision conspicuous when language of body is in contrasting type); *Amtech Elevator Services Co. v. CSFB 1998-P1 Buffalo Speedway Office Ltd. P'ship*, 248

---

[10] At the time of *Dresser*, UCC section 1.201(10) defined "conspicuous" as follows:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: Non-Negotiable Bill of Lading) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court.

Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, sec. 1.201(10), 1967 Tex. Gen Laws 2343, 2349 (UCC, Tex. Bus. & Com. Code § 1.201(10), since amended). The current version of Section 1.201(10) reads:

> "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> > (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
> >
> > (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

UCC, Tex. Bus. & Com. Code Ann. § 1.201(10).

11

S.W.3d 373, 378 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("[T]he capitalized heading, followed by the language in all capitals, attracts the attention of a reasonable person, and thus, the indemnity provision is conspicuous.").

Pioneer argues that the indemnity clause is inconspicuous because the warranty page it is on follows the signature page and includes thirteen other paragraphs. While these factors weigh against conspicuousness, they do not necessarily render a clause inconspicuous. *See Akin v. Bally Total Fitness Corp.*, No. 10-05-00280-CV, 2007 WL 475406, at *2 (Tex. App.—Waco Feb. 14, 2007, pet. denied) (mem. op.) (clause conspicuous although it appeared "on the back of the contract, on the same page with twenty other provisions, all beginning with a heading in all capital letters and bold face, parts of the body of those other provisions also being in all capital letters or in bold face" when clause was bolded, in larger type, and surrounded by box). Pioneer further argues that the small size of the type used on the warranty page renders the indemnity clause inconspicuous. A provision that is written in type so small it is "practically illegible" is inconspicuous. *Littlefield*, 955 S.W.2d at 274–75 (provision in four-point font was too small to be read and therefore inconspicuous). Here, however, the text,[11] while small, is not so small as to be illegible, although the small size of the text weighs against conspicuousness. *See id.*; *see also Matador Prod. Co. v. Weatherford Artificial Lift Sys., Inc.*, 450 S.W.3d 580, 593 (Tex. App.—Texarkana 2014, pet. denied) ("tiny print" on price estimate directing customer to website for indemnity clause did not meet conspicuousness requirement).

Our review reveals some factors in favor of conspicuousness and other factors against it. The capitalization and bolding of the indemnity clause draw

---

[11] As best as we can tell from the reproduction in the record, the text of the indemnity clause appears to be printed in six- to seven-point font.

attention to it, while the placement of the clause on the warranty page and the small size of the type obscure it. Ultimately, we conclude a reasonable person ought to have looked at all pages of the agreement, and on looking at the warranty page, which was included in all three proposals comprising the agreement, ought to have noticed the bolded, all-capitalized indemnity clause despite the relatively small size of the type on that page. *See* Tex. Bus. & Com. Code Ann. § 1.201(b)(10) (clause is conspicuous when "a reasonable person against which it is to operate ought to have noticed it").

We overrule Pioneer's third issue challenging the conspicuousness of the indemnity clause.

### III.   CONCLUSION

We sustain Pioneer's first issue in part and its second issue. We reverse the portion of the trial court's judgment granting Burlington's motion for summary judgment on the grounds that Pioneer owed Burlington indemnity and defense for the employee's strict-products-liability claim and implicitly denying Pioneer's motion for summary judgment on that same issue.[12] We affirm the remainder of the trial court's judgment as challenged on appeal.

This court is authorized to render the judgment that the trial court should have rendered. Tex. R. App. P. 43.3. Here, however, the trial court's award was based on costs of settlement and defense for all claims at issue, necessitating further proceedings given that we have reversed the trial court's judgment as to one of those claims. *See id.* R. 43.3(a). Accordingly, we remand the case to the trial

---

[12] While the trial court did not explicitly deny Pioneer's motion for summary judgment, "[w]hen parties present cross-motions that are opposed and mutually exclusive, an order that grants one motion may implicitly deny the other." *Gen. Agents Ins. Co. of Am., Inc. v. El Naggar*, 340 S.W.3d 552, 557 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *Walker v. Gutierrez*, 111 S.W.3d 56, 60 n.1 (Tex. 2003)).

court with instructions for the trial court to render partial summary judgment in Pioneer's favor in accordance with our judgment and conduct additional proceedings limited to determining the costs of settlement and defense. *See id.*


/s/    Charles A. Spain
        Justice

Panel consists of Justices Zimmerer, Spain, and Hassan (Hassan, J., concurring).