Opinion issued December 23, 2025



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00704-CV

———————————

**INDUSTRIAL SPECIALISTS, LLC, Appellant**

**V.**

**BLANCHARD REFINING COMPANY LLC AND MARATHON
PETROLEUM COMPANY LP, Appellees**

On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Case No. 17-CV-1242

## O P I N I O N

The crux of this case boils down to a straightforward question: Can an indemnitee under a contractual indemnity agreement—who is sued with other defendants for negligence—settle all of the plaintiffs' negligence claims and then

recover from its indemnitor the portion of the settlement attributable to the other defendants under a comparative indemnity scheme?

The answer to that question is yes, with one caveat. The indemnitee may do so provided that the parties' indemnity agreement complies with the express negligence doctrine and expressly provides for such comparative indemnity.

Because we conclude that the indemnity provision here does not expressly provide for comparative indemnity, it fails to satisfy the express negligence doctrine and is therefore unenforceable as a matter of law under these circumstances.

We reverse and render.

**Background**

Blanchard Refining Company LLC owns and operates the Galveston Bay Refinery in Texas City. Industrial Specialists, LLC is a large industrial contractor who provides specialty services to the oil and gas industry. Blanchard and Industrial executed a five-year Major Service Contract that called for Industrial to provide turnaround services at Blanchard's refinery. The parties' contract contains the following indemnity provision in Article 13.1:

> CONTRACTOR AGREES TO . . . INDEMNIFY . . . COMPANY [AND] ITS AFFILIATED COMPANIES . . . FROM AND AGAINST ALL LOSSES, DAMAGES . . . AND OTHER LIABILITIES . . . BECAUSE OF . . . BODILY INJURY, INCLUDING DEATH . . . WHICH OCCUR . . . IN CONNECTION WITH PERFORMANCE OF THE WORK CONTEMPLATED HEREUNDER . . . **EXCEPT TO THE EXTENT THE LIABILITY, LOSS OR DAMAGE IS**

2

**ATTRIBUTABLE TO AND CAUSED BY THE NEGLIGENCE OF COMPANY** . . . .

(Emphasis added). "Contractor" is defined as Industrial, and "Company" is defined as Blanchard and "any affiliates of" Blanchard, which includes Marathon Petroleum Company LP.[1]

Three years into the five-year contract, a fire occurred in a regenerator vessel at the refinery, injuring fifteen Industrial employees and one employee of another contractor, Certified Safety, Inc. One Industrial employee ultimately died from his injuries. In four separate lawsuits, the injured employees (the personal-injury plaintiffs) asserted negligence claims against Marathon and its other contractors.[2] All the personal-injury plaintiffs' suits were transferred for multi-district pretrial

---

[1]	"Affiliates" is defined as "another company or other legal entity that directly or indirectly through one or more intermediaries, controls or is controlled by or is under common control with the specified company or other legal entity." Blanchard is a wholly-owned subsidiary of Blanchard Holdings Company LLC, which is, in turn, a wholly-owned subsidiary of Marathon Petroleum Company LP. Blanchard and Marathon are both parties to this appeal. We refer to them collectively as Marathon.

[2]	The other contractors sued were Certified Safety, Inc., Innovative Ventilation Systems, Inc., and AltairStrickland, Inc.

3

proceedings.[3] Industrial was not named as a defendant,[4] but was designated as a responsible third party.[5]

Marathon demanded a defense and indemnity from Industrial pursuant to the indemnity provision in the parties' contract. Industrial rejected the demand.

Marathon and the other contractors collectively settled all the personal-injury plaintiffs' claims against them for $104 million (the Settlement). Marathon and the other contractors also settled all claims amongst themselves, including Marathon's indemnity claims against the contractors. According to the settlement agreements between Marathon and the other contractors, Marathon would pay $86 million of the $104 million Settlement to the plaintiffs.[6]

---

[3]  *See In re Blanchard Ref. Galveston Bay Refinery FCCU3 Fire Litig.*, Cause No. 16-MDL-0001, in the 56th Judicial District Court of Galveston County, Texas (i.e., the Underlying Lawsuit).

[4]  Section 408.001(a) of the Texas Labor Code precluded Industrial's employees from suing their employer. *See* TEX. LAB. CODE § 408.001(a). It is unclear from the record why Certified Safety's employee chose not to sue Industrial.

[5]  *See* TEX. CIV. PRAC. & REM. CODE § 33.004.

[6]  The other settling contractors contributed to the settlement as follows: (1) Altair – $2 million; (2) Innovative – $11 million; and (3) Certified Safety – $5 million. There is a dispute among the parties whether Altair, through its parent company EMCOR, provided Marathon an additional $16 million in connection with the settlement, in the form of a 3% rebate on future work provided by EMCOR to Marathon.

4

Industrial did not participate in the Settlement with the plaintiffs. And each of the personal-injury plaintiff's settlement agreements contains the following (or similar) language:

> The Parties further agree that the releases contemplated in this Agreement do not encompass or include any claims that any Party has or may have against Industrial Services LLC ("ISI"), Brand Energy & Infrastructure Services, Inc. ("Brand") or their respective parents, subsidiaries, affiliates, successors, and assigns. Neither ISI nor Brand is a party or third-party beneficiary to this Agreement.

Marathon then filed this breach of contract suit against Industrial, seeking to enforce their indemnity agreement and to recover much of what it paid in the Settlement to the underlying personal-injury plaintiffs. Because construction of the indemnity provision in Article 13.1 of their contract is a threshold legal question, both Marathon and Industrial moved for competing summary judgments. The trial court denied both summary judgment motions.[7]

---

[7] Industrial requested permission from the trial court to file a permissive appeal from the trial court's denial of its motion for summary judgment. In granting Industrial leave to file a permissive appeal, the trial court withdrew its previous order denying summary judgment and issued an amended order. The amended order denied Industrial's summary-judgment motion and made the following substantive ruling:

> The March 14, 2013 Major Service Contract between [Industrial] and Plaintiff Blanchard Refining Company LLC does not prohibit Plaintiffs Blanchard and Marathon Petroleum Company LP from seeking indemnity from [Industrial] for personal-injury settlement payments Plaintiffs made, to the extent those payments were attributable to or caused by the negligence of parties other than Plaintiffs.

5

Before trial, at the request of the parties and after extensive briefing, the trial court issued the following legal rulings under Texas Rule of Civil Procedure 166(g):

1. The "express negligence rule," as announced in *Ethyl Corp. v. Daniel Const. Co.*, 725 S.W.2d 705 (Tex. 1987), does not render unenforceable the indemnity agreement in the Major Services Contract between Marathon and [Industrial].

2. The rule set forth in *Beech Aircraft Corp. v. Jenkins*, 739 S.W.2d 19 (Tex. 1987)[,] concerning contribution rights under either common law or the comparative negligence statute does not preclude enforcement of the indemnity agreement in the Major Services Contract between Marathon and [Industrial].

3. Marathon's settlement of personal injury claims in cause no. 16-MDL-0001, *In re Blanchard Refining Galveston Bay Refinery FCCU3 Fire MDL*[,] constitutes "liability," "loss," or "damage" under the terms of the indemnity agreement in the Major Services Contract between Marathon and [Industrial].

The case then went to a jury trial. The jury determined that the negligence of Altair, Certified Safety, Innovative, Industrial, and Marathon together "proximately caused the occurrence that was the subject of the Underlying Lawsuit." The jury assigned the percentage or responsibility attributable to each as follows:

| | |
|---|---|
| Altair | 18% |
| Certified Safety | 5% |
| Innovative | 22% |
| Industrial | 17% |

Industrial filed a petition for an interlocutory permissive appeal, which this Court denied. *See Indus. Specialists, LLC v. Blanchard Ref. Co.*, 634 S.W.3d 760 (Tex. App.—Houston [1st Dist.] 2019, pet. granted) (mem. op.). The Texas Supreme Court granted Industrial's petition for review, but ultimately determined that this Court did not abuse its discretion in denying the petition for permissive appeal and declined to address the merits of the appeal. *See Indus. Specialists, LLC v. Blanchard Ref. Co.*, 652 S.W.3d 11, 21 (Tex. 2022).

6

Marathon          38%

Based on the jury's findings, and after various post-trial motions, the trial court signed a final judgment. The final judgment awarded Marathon actual damages of $46,480,000.00—representing "the amount [Marathon] paid to settle the Galveston Bay Refinery FCCU-3 Fire Litigation ("Underlying Litigation") of $86,000,000.00 less the portion of the liability that was attributable and caused by the negligence of [Marathon] (i.e., 38% of $104,000,000.00, or $39,520,000.00), as established by the jury's verdict." The final judgment also awarded Marathon prejudgment interest and attorney's fees and denied Industrial's request for declaratory relief.

Industrial filed additional post-judgment motions, which the trial court denied. Industrial then timely perfected this appeal.

**Express Negligence Doctrine**

Industrial argues in its first issue that Marathon's indemnity claim is barred as a matter of law by the express negligence doctrine. According to Marathon, the express negligence doctrine is inapplicable here because: (1) Marathon is not seeking indemnification for its own negligence, and (2) the parties' contract explicitly excludes indemnification for Marathon's own negligence—taking it out of the purview of the express negligence doctrine.

For the reasons discussed below, we agree with Industrial that the express negligence doctrine applies here and because the indemnity provision does not comply with that doctrine, it is unenforceable as a matter of law.

## A. Standard of Review and Applicable Law

The trial court issued a pre-trial order pursuant to Texas Rule of Civil Procedure 166(g) in which it concluded that the express negligence doctrine does not render unenforceable the indemnity agreement in the parties' contract. The purpose of Rule 166 is "to assist in the disposition of the case without undue expense or burden to the parties." TEX. R. CIV. P. 166. And Rule 166(g) expressly allows the trial court to consider "[t]he identification of legal matters to be ruled on or decided by the court." *Id.* 166(g).

Indemnity agreements must be strictly construed, pursuant to the usual principles of contract interpretation, in order to give effect to the parties' intent as expressed in the agreement. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000); *E.I. Du Pont De Nemours & Co. v. Shell Oil Co.*, 259 S.W.3d 800, 805 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

The express negligence doctrine, adopted by the Texas Supreme Court in *Ethyl Corp. v. Daniel Construction Co.*, was established "to cut through the ambiguity" of indemnity provisions, thereby reducing the need for satellite litigation regarding the interpretation of indemnity clauses. *Fisk Elec. Co. v. Constructors &*

*Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994) (citing *Ethyl Corp.*, 725 S.W.2d at 708). The doctrine provides that "parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms." *Ethyl Corp.*, 725 S.W.2d at 708. That intent must be specifically stated within the four corners of the contract. *Id.* An indemnity provision that fails to expressly state such intent of the parties is unenforceable as a matter of law. *Fisk Elec.*, 888 S.W.2d at 814 (citing *Gulf Coast Masonry, Inc. v. Owens-Illinois, Inc.*, 739 S.W.2d 239, 239–40 (Tex. 1987)).

The express negligence doctrine is not an affirmative defense but a rule of contract interpretation. *Id.* And issues of contract interpretation are determined as a matter of law. *Id.* Moreover, if the language in an indemnity agreement can be given a certain or definite legal meaning, then we will construe it as a matter of law. *Gulf Ins. Co.*, 22 S.W.3d at 423. In doing so, we give the words their plain, ordinary, and generally accepted meaning. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). And we will not rewrite the provision or add to its language under the guise of interpreting it. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016).

## B.     Analysis

Industrial argues that Marathon's claim for indemnity here relies on a form of "comparative indemnity" that requires compliance with the express negligence doctrine.  But because the parties' indemnity provision does not expressly state that Industrial will indemnify Marathon when Marathon's concurrent negligence causes the liability, loss, or damage for which it seeks indemnification, Industrial argues that the indemnity provision is unenforceable as a matter of law.

To resolve this issue, we need look no further than the supreme court's decision in *Ethyl*.  There, an employee of a contractor, Daniel Construction, was seriously injured while working on Ethyl's premises. 725 S.W.2d at 706.  The employee settled his claim against Daniel for worker's compensation benefits and then sued Ethyl. *Id.* at 707.  Ethyl in turn sued Daniel seeking indemnity based on the following indemnity provision in their contract: "[Daniel] shall indemnify and hold [Ethyl] harmless against any loss or damage to persons or property as a result of operations growing out of the performance of this contract and caused by the negligence . . . of [Daniel]." *Id.*  The jury found both Ethyl and Daniel negligent and apportioned the negligence as 90% to Ethyl and 10% to Daniel. *Id.*

The supreme court adopted the express negligence doctrine and concluded that the parties' indemnity provision failed to meet that doctrine because it did not expressly state that Ethyl would be indemnified for its own negligence. *Id*. at 708.

10

The supreme court then turned to Ethyl's alternative argument that, at the very least, it was entitled to "comparative indemnity to the extent of *Daniel's* negligence which the jury found to be 10%." *Id.* (emphasis added). The court made clear that "[i]ndemnitees seeking indemnity for the consequences of their own negligence which proximately causes injury jointly and concurrently with the indemnitor's negligence must also meet the express negligence test." *Id.* Because the agreement in *Ethyl* also "contain[ed] no provision for contractual comparative indemnity," it again failed to meet the express negligence test. *Id.*

The *Ethyl* court then emphasized that because there exists no right in Texas to indemnity on a comparative basis under the common law,"[p]arties may [only] contract for comparative indemnity so long as they comply with the express negligence doctrine set out herein." *Id*. at 708–09; *see also Gilbane Bldg. Co. v. Keystone Structural Concrete, Ltd.*, 263 S.W.3d 291, 297 n.5 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("Comparative indemnity must arise from a contract that satisfies the express negligence rule.").[8]

---

[8] *See also Am. Eurocopter Corp. v. CJ Sys. Aviation Grp.*, 407 S.W.3d 274, 289 (Tex. App.—Dallas 2013, pet. denied) (explaining that express negligence doctrine applies where indemnitee's negligence proximately causes injury jointly and concurrently with indemnitor's negligence, and in that situation, "the indemnity provision must expressly provide for the parties' concurrent negligence").

Here, as the indemnitee did in *Ethyl*, Marathon seeks comparative indemnity —i.e., indemnity for the consequences of its own negligence which proximately caused injury jointly and concurrently with Industrial's and the other contractors' negligence. *See Ethyl Corp.*, 725 S.W.2d at 708.[9]

And yet Marathon urges that the express negligence rule, and thus *Ethyl*, has no application here because the parties' indemnity agreement expressly *excludes* indemnification for Marathon's own negligence—taking it out of the purview of the express negligence rule altogether. Because it argues that it has never sought to recover for its own negligence, Marathon contends the supreme court's decision in *Gulf Insurance*—not *Ethyl*—dictates that it prevails here. Marathon further attempts to distinguish *Ethyl*'s discussion of comparative indemnity, stating that it "stands for the unremarkable position that when an indemnity provision may reasonably be read to require indemnity for an indemnitee's own share of liability—whether the indemnitee's negligence be sole, joint, concurrent, comparative, or otherwise—it must comply with the express negligence rule." We disagree with Marathon's characterization of both *Ethyl* and *Gulf Insurance*.

---

[9] As noted above, the jury found Marathon, Industrial, and the other three contractors proximately caused the fire at the refinery. *See Payne & Keller, Inc. v. P.P.G. Indus., Inc.*, 793 S.W.2d 956, 958 (Tex. 1990) ( "[C]oncurrent negligence exists where the acts of two different persons have concurred to produce injuries for which both are responsible." (quotation and citation omitted)).

Turning first to *Ethyl*, we note that in arguing that it was entitled to comparative indemnity, Ethyl was not seeking indemnification for its *own share of the liability*, i.e., 90%, but rather the 10% share of liability attributable to Daniel. If Marathon's interpretation of *Ethyl* were correct, then the supreme court would have concluded that the express negligence rule was not applicable to Ethyl's request for comparative indemnity because it was not seeking to recover the portion attributable to its own negligence and would have permitted Ethyl to recover the 10% attributable to Daniel. Instead, the court concluded that Ethyl could *not* recover comparative indemnity for the 10% liability attributable to Daniel because the contract contained no provision for contractual comparative indemnity.

Thus, under *Ethyl*, the express negligence doctrine applies in all cases in which the indemnitee seeks to be indemnified for its own negligence. This includes instances where the indemnitee seeks to be indemnified on a comparative or proportional basis.[10] The latter is what Marathon seeks here.

And *Gulf Insurance* does not dictate a different result. In *Gulf Insurance*, Burns Motors obtained a judgment against an independent insurance agent, Nash, for knowingly misrepresenting the scope of policy coverage, and it took assignment

---

[10] *See, e.g.*, *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 459 (5th Cir. 2002) ("The express negligence rule applies if Quorum seeks indemnification for its own acts of negligence or for the joint or concurrent negligence of Quorum and the Hospital.").

of Nash's claims for contractual indemnification against the issuing insurance companies. *Gulf Ins.*, 22 S.W.3d at 419–20. The indemnity provision in the Agency-Company Agreement between Nash and the insurers required the insurers to indemnify Nash for liability "based on actual or alleged error of [the insurers] . . . *except to the extent* [Nash] has caused, contributed to or compounded such error." *Id.* at 420 (emphasis added). The supreme court rejected an argument that it should construe the Agency-Company Agreement with reference to the express negligence doctrine. *Id.* at 423–24. In doing so, the court explained:

> Here, the Agency–Company Agreement provides that the agent is, under certain circumstances, indemnified "except to the extent Agent has caused, contributed to or compounded such error." Burns Motors argues that even if the indemnity provision precludes recovery for Nash's wrongful conduct, it still should allow indemnity for the part of the wrong that [the insurers] caused. Thus, Burns Motors is not asserting that Nash should be indemnified for his wrong acts but only that he should be indemnified for the part of the error that [the insurers] caused. The Agency–Company Agreement does not contemplate indemnifying the indemnitee from consequences of his own negligence. Thus, the express negligence doctrine does not apply here.

*Id.*

But what Marathon fails to acknowledge is that just prior to reaching this conclusion, the supreme court concluded that Nash had "*fully* 'caused, contributed to or compounded' the error that caused Burns Motors damages." *Id.* at 423 (emphasis added). And, unlike here, there was no finding or allegation that anyone else proximately caused an injury jointly and concurrently with Nash (the

14

indemnitee).  Thus, comparative indemnity under *Ethyl* was not at issue in *Gulf Insurance*.

We now consider whether the language of the indemnity agreement here satisfies the express negligence test by expressly providing for the comparative indemnity Marathon seeks.  Just like in *Ethyl*, we conclude that it does not.

It is undisputed that Article 13.1's main clause—that actually establishes Industrial's indemnity obligation—contains no reference to comparative indemnity.  Rather, Marathon relies on the clause detailing the *exception* to Industrial's indemnity obligation to support its position that Industrial's indemnity obligation includes the portion of the Settlement attributable to Industrial's and the other contractors' negligence.  Thus, according to Marathon, the exception clause establishes the comparative indemnity obligation.

But there is also no language in the exception clause expressly stating that Industrial is required to indemnify Marathon for Industrial's (or anyone else's) allocable share or portion of comparative fault in the event that the parties are concurrently negligent.  And nowhere in the exception clause of Article 13.1 does it expressly state that Industrial is obligated to indemnify Marathon for any comparative indemnity or for any manner of Marathon's own negligence. *See Ethyl Corp.*, 725 S.W.2d at 708; *see also Hous. Lighting & Power Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 890 S.W.2d 455, 456, 459 (Tex. 1994) (recognizing that parties

15

may contract for comparative indemnity but must do so expressly, and holding that indemnity provision stating that indemnitor would indemnify railway company for losses "whether such loss, damage, injury or death be caused or contributed to by the negligence of Railway Company" contained "no provision for comparative indemnity").

In fact, the exception clause on its face states the opposite—that Industrial agrees to indemnify Marathon "*except to the extent* the liability, loss or damage is attributable to and caused by *the negligence* of [Marathon]." (Emphasis added.)

Industrial and Marathon both maintain that the indemnity provision is unambiguous. They also both maintain that the phrase "except to the extent" constitutes a limitation on Industrial's indemnity obligation. They disagree, however, on its meaning.

Industrial contends that the common meaning of "except to the extent" is that it marks an exception to a preceding obligation. And when this exception provision is read as a whole, it means that Industrial does not have to indemnify Marathon for "the negligence" of Marathon—sole, joint, concurrent, or otherwise.

On the other hand, Marathon asserts that "except to the extent" here means "the degree of Marathon's separate negligence." And, according to Marathon, this carves out from Industrial's indemnity obligation just the degree of Marathon's separate negligence—and in turn erects a comparative indemnity obligation.

16

But Marathon's interpretation of "except to the extent" does not square with the supreme court's interpretation of the same language in *Gulf Insurance*. As noted above, the indemnity provision in *Gulf Insurance* required the insurers to indemnify their agent for errors or alleged errors in handling business, "*except to the extent* [their] agent has caused, contributed to or compounded such error." 22 S.W.3d at 422–23 (emphasis added). The supreme court described this language as unambiguously providing for an "exclusion from liability for indemnification" for any misconduct by the agent. *Id.* at 423. In reaching that conclusion, the supreme court construed the plain language of the indemnity agreement as written and did not add any words to it.

Here, Marathon would have us do the opposite and add the words "the degree of Marathon's separate negligence" to the parties' indemnity provision. But if the parties had intended to limit the exception to Industrial's indemnity obligation to just "the degree of Marathon's separate negligence"—and provide for a comparative indemnity scheme—they would have expressly said so by including those words in their indemnity agreement. They did not. And we may not add them now. *See Fischer*, 479 S.W.3d at 239.

Accordingly, we do not agree with Marathon that the phrase "except to the extent" is enough to expressly state the parties' intent to create a comparative indemnity obligation. Marathon counters that "magic language," like joint or

17

concurrent, is not required to satisfy the express negligence test. *See Atl. Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724, 726 (Tex. 1989) ("Although the language does not differentiate between degrees of negligence, the language 'any negligent act of ARCO' is sufficient to define the parties' intent. Usage of the terms 'joint,' 'concurrent' or 'comparative contractual' would not add to the expression of intent to exculpate ARCO for its negligence."). While we agree that *Ethyl* does not require the use of certain words, it does require that the parties' intent for contractual comparative indemnity be express and stated in specific terms. *Ethyl Corp.*, 725 S.W.2d at 708. Implication is not express. *See, e.g.*, *Hous. Lighting & Power Co.*, 890 S.W.2d at 456, 459.[11] And the issue in *Atlantic Richfield* was not whether the parties' contract expressly provided for comparative indemnity, as is the issue here, because the contract there expressly required indemnification for "any negligent act" of the indemnitee. *See* 768 S.W.2d at 724.

Moreover, the agreement here gives no indication that term "the negligence," as used in the exception clause, is meant to be limited to a certain type or category of Marathon's negligence. Rather, the term "*the* negligence," without limitation,

---

[11]   *Cf. Hardy v. Kroger Co.*, Civil Action No. 6:17-CV-00417-JDK, 2019 WL 1306216, at *3 (E.D. Tex. Jan. 24, 2019) (concluding that indemnity provision stating that indemnitor was not obligated to indemnify Kroger "if such accident is caused by the sole negligence or willful act of Kroger" was silent as to indemnification obligation in the cases of concurrent negligence and, therefore, did not express intent to invoke comparative indemnity).

reasonably means that the exception was intended to exclude indemnification in cases where the loss or liability is attributable to and caused by *any* form of negligence by Marathon—be it sole, joint, concurrent, or otherwise. *Cf. id.* at 726. And at oral argument Marathon and Industrial both agreed that the term "the negligence" includes *any negligence* of Marathon—sole, joint, concurrent, or otherwise.

In sum, Marathon sought (and the trial court awarded) contractual comparative indemnity. *Ethyl* allows parties to contract for comparative indemnity—but their agreement must expressly and specifically provide for it. And here, the parties' indemnity provision fails to do so as required by *Ethyl*. Instead, as in *Gulf Insurance*, we conclude that the plain language of the parties' indemnity agreement unambiguously sets forth an "exclusion from liability for indemnification" for liability, loss, or damage that is attributable or caused by any negligence—sole, joint, concurrent, or otherwise—of Marathon. Accordingly, we hold that Marathon is not entitled to any indemnification for the Settlement under the parties' agreement. Because this issue is dispositive, we do not consider the remaining issues. *See* TEX. R. APP. P. 47.1.

## Conclusion

We reverse the judgment of the trial court and render judgment that Marathon take nothing from Industrial.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Morgan and Dokupil.